# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES POSTIGLIONE, et al,** | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| **CROSSMARK, INC.,** | : | No. 11-960 |
| Defendant. | : | |

**Norma L. Shapiro, J.**                                                                                           **November 14th, 2012**

## MEMORANDUM

Plaintiffs allege violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and seek to represent a class of similarly situated individuals pursuant to 29 U.S.C. § 216(b). Before the court are three motions: Plaintiffs' Renewed Motion for Conditional Certification of Collective Class; Plaintiffs' Motion to Compel Answers to Interrogatories and to Compel Production of Documents; and Plaintiffs' Motion for Leave to Amend their motion for class certification. Because neither the original nor the amended proposed class members are similarly situated to the named plaintiffs, these motions will be denied. Furthermore, all of the named plaintiffs other than Postiglione will be dismissed from the action as plaintiffs improperly joined under Federal Rule of Civil Procedure 20.

## I. Background

Plaintiffs are current and former employees of defendant Crossmark, Inc. (Crossmark). They include full-time and part-time employees. Defendant Crossmark provides sales, retail merchandising, and inventory management services to retailers and manufacturers of consumer goods. These services are provided by over 12,000 "retail representatives" employed by Crossmark. The retail representatives are divided into different divisions with varying duties,

1

territories, and supervisors. Some teams of retail representatives work only in a particular chain of retail stores but provide inventory and merchandising services for a number of products within those stores. Other teams work in many different retail stores but provide service only for particular brands of products. Still other teams specialize in labor-intensive reorganizations of shelves and products. Generally, retail representatives travel to different retail store locations to perform their job duties. Retail representatives are paid on an hourly basis and are non-exempt under the FLSA.

Plaintiffs, present and former retail representatives for Crossmark, allege that Defendant violated the FLSA by not paying its employees for overtime. In particular, Plaintiffs allege that they were not paid for three categories of time worked. First, some retail representatives had to perform certain administrative tasks in the morning before beginning their work at the retail locations. These tasks included checking the representative's e-mail and confirming his schedule for the day. Similarly, some retail representatives had to perform administrative tasks in the evenings after completing work at the retail locations. These employees had to enter the data they had collected into Crossmark's computer system and report on the tasks they had performed throughout the day. For each employee, the time for these administrative tasks in the mornings and evenings varied from a few minutes to a few hours to complete each day, depending on his particular duties. Plaintiffs also allege that some retail representatives had to load promotional materials or merchandise into their cars in the morning and unload those materials in the evenings. Plaintiffs allege that Crossmark employees were not paid for some or all of the time spent working on these administrative tasks in the mornings and evenings. They contend that Crossmark either discouraged or did not allow its employees to record some or all of their administrative time. Crossmark denies this allegation.

Second, retail representatives were not paid for the time they spent driving to their first assignment or home from their last assignment of the day.[1] They were paid for the time spent driving between retail locations. Plaintiffs' position is that the employees' workday begins with the administrative tasks performed at home in the morning and ends with the administrative tasks performed at home in the evening. They argue that all of the employees' driving time throughout the day is compensable. Defendant responds that the morning and evening drive time is not compensable under the FLSA because the administrative tasks need not be performed at home or immediately before or after the employees complete their assignments at the retail locations.

Finally, Plaintiffs allege that at least some retail representatives were not paid for all of the time they spent working at the retail locations. They allege that Crossmark instead paid its employees based on a fixed maximum "budgeted time" or "project time." Crossmark denies this allegation.

Plaintiffs allege that to the extent employees worked more than forty hours a week Crossmark's failure to pay employees for these three categories of time constitutes a violation of the FLSA. Plaintiffs further allege that when these three categories of time are included, even some part-time employees worked more than forty hours a week and are entitled to overtime compensation under the FLSA.

The original complaint in this action listed 31 named plaintiffs. Plaintiffs almost immediately began filing notices that other employees had consented to join the named plaintiffs in a collective action. On June 3, 2011, this court granted Defendant's motion to dismiss and granted leave for Plaintiffs to file an amended complaint. Plaintiffs' initial motion to certify a class was rendered moot by that order. Plaintiffs took this opportunity to add 21 new named

---

[1] Crossmark did pay employees for the time spent driving if these drives were more than forty miles or took more than one hour.

plaintiffs, including the 18 individuals who had filed consents to join the collective action. The amended complaint names 52 plaintiffs. Plaintiffs continued to submit consents to join a collective action.

The court allowed minimal pre-certification discovery, including depositions of ten individuals by defendants. Plaintiffs have filed a renewed motion for conditional certification of a collective class. Plaintiffs ask the court to certify a conditional class of all former and current full-time and part-time employees of Crossmark who have been classified as Retail Representatives or Data Collectors at any time within the previous three years. Plaintiffs ask the court to authorize the sending of notices to all these individuals of their right to opt-in to the class. After lengthy briefing and oral argument on the motion, Plaintiffs filed a motion for leave to amend their motion for class certification. Admitting that the members of the originally-proposed class were not similarly situated, Plaintiffs request certification of a narrower class of employees. The amended proposed conditional class would include only those retail representatives employed on a Crossmark Retail Team or a Dedicated Team in only 15 of 41 different departments. There are over 9,000 current employees in those departments working under nearly 300 supervisors. Plaintiffs have also narrowed the proposed conditional class to those persons who were paid to work more than thirty hours a workweek. The amended class would include 31 of the 52 named plaintiffs listed on the current amended complaint.[2]

Just before oral argument on the conditional class certification motion, Plaintiffs filed a motion to compel discovery. The court stayed briefing on that motion pending determination of the motion for conditional class certification.

---

[2] The fact that the second proposed class would include only some of the named plaintiffs may create a conflict of interest for Plaintiffs' counsel, who represent all 52 of the named plaintiffs. Because certification is not appropriate for even the smaller amended class, the court need not address this potential conflict.

4

## II. Legal Standard

Under the collective action provision of 29 U.S.C. § 216(b) of the FLSA, an employee alleging an FLSA violation can bring a suit on behalf of "himself . . . and other employees similarly situated." The statute provides, however, that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court."

The Court of Appeals for the Third Circuit has recently issued a pair of decisions clarifying the standards to be applied in deciding whether to certify a class under § 216(b). The Court of Appeals has affirmed, but not required, the use of a two-tier analysis. *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) ("[In *Symczyk*] [w]e implicitly embraced this two-step approach, and we affirm its use here."); *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192-93 & n.5 (3d Cir. 2011) ("Although this two-step approach is nowhere mandated, it appears to have garnered wide acceptance."). At the first stage, "the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff[s]." *Symczyk*, 656 F.3d at 192. This "conditional certification" is not really certification of a class under the statute at all. Rather, it is only an exercise of the district court's discretionary power, upheld in *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), "to facilitate the sending of notice to potential class members." Symczyk, 656 F.3d at 194. Certification at this initial stage "is neither necessary nor sufficient for the existence of a representative action under FLSA." *Id.*

The level of proof required at this first stage was long a matter of disagreement among district courts in the Third Circuit. In *Symczyk*, the Court of Appeals clarified the standard and held that the plaintiffs must make a "'modest factual showing' that the proposed recipients of

5

opt-in notices are similarly situated." 656 F.3d at 192-93. The Third Circuit rejected the notion that "substantial allegations" that the class was similarly situated were sufficient for preliminary certification. *Id.* Under the "modest factual showing" standard, the plaintiff must produce some evidence, "beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* at 193 (internal quotation omitted). However, the court should not evaluate the merits of the plaintiffs' claims at this point. If the plaintiff meets this burden, the court will "certify" a collective action for the purposes of notice and pretrial discovery.

If a conditional class is certified at the first stage, a court usually engages in the second step of the certification process after discovery has been completed. The defendant will often file a motion to "decertify" the class. The court at this stage makes a conclusive determination that every plaintiff who has opted in to the action is in fact similarly situated to the named plaintiff. *Id*. at 193. If the plaintiff meets his burden here, the case may proceed to trial as a collective action. *Id.* If the court determines that the opt-in plaintiffs are not similarly situated to the named plaintiffs, the opt-in plaintiffs' claims are dismissed without prejudice. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). The plaintiff bears a heavier burden of proof at this second stage. At the second stage, the plaintiff must prove, by a preponderance of the evidence, that the "proposed collective plaintiffs are similarly situated." *Zavala*, 691 F.3d at 536. Courts are to take an ad hoc approach, "consider[ing] all the relevant factors and mak[ing] a factual determination on a case-by-case basis." *Id.* The relevant factors include "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they

6

have similar salaries and circumstances of employment." *Id.* at 536-37. Plaintiffs may also be dissimilar if they are subject to individualized defenses. *Id.*

Plaintiffs in this action are now moving for conditional certification at the first stage. In order to prevail at this stage, Plaintiffs must make a "modest factual showing" in which they produce some evidence "of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk*, 656 F.3d at 193. If Plaintiffs were to meet this burden, the court would send notice to potential class members and permit discovery commensurate with the size and scope of the class certified.

### III. Discussion

As noted above, pending before the court are a motion for conditional class certification and a motion for leave to amend the motion for conditional class certification. After full briefing and oral argument and, according to Plaintiffs, in response to concerns raised by the court at oral argument and documents recently produced by Defendant, Plaintiffs wish to narrow the proposed class. The court begins by determining if even this narrowed class of current and former employees is similarly situated to the named plaintiffs. The discussion below only considers the affidavits and depositions of the named plaintiffs who would be included in the narrowed class.

A. *Plaintiffs' Evidence is Unreliable*

Although it need not have done so, this court allowed minimal discovery before considering the motion for conditional class certification. Defendant was allowed to send questionnaires to the named plaintiffs and to take a limited number of depositions. Defendant deposed nine of the named plaintiffs and one Crossmark supervisor. Of those nine named plaintiffs, only six would remain in the narrower amended class. Plaintiffs informed the court that they did not need to conduct any discovery to meet their burden at this stage.

Ultimately, plaintiffs contend that they have established "that Crossmark has an unwritten policy to unlawfully deny wages to Plaintiffs and the proposed class for work they performed on administrative tasks at the beginning and end of each day, and for work they performed at retail locations that exceeded Crossmark's budgeted time limit."  Pls.' Reply Supp. Renewed Mot. Cond. Class Cert. 6.  They allege a nationwide policy with relation to which the named plaintiffs and the proposed class are similarly situated.  Plaintiffs support this allegation with signed affirmations of many of the named plaintiffs and three Crossmark supervisors, charts of unpaid wages and unpaid work hours compiled by Plaintiffs' counsel based on interviews with the named plaintiffs, and transcripts of some of the depositions conducted by Defendant.

Plaintiffs' evidence is unreliable.  Plaintiffs have produced dozens of affirmations alleging that Defendant failed to pay for compensable overtime.  These affirmations seem to be derived from forms and not to have been individually drafted for the employees signing them.  Many of the named plaintiffs and a supervisor contradicted their sworn affirmations in their deposition testimony.  Further, Defendant's time sheets contradict both the affirmations and depositions.  Some examples will make clear why the court finds Plaintiffs' evidence so unreliable.

Jeanne Brunozzi claimed in her affirmation that she was paid based on "budgeted time" rather than the full amount of time she actually spent at each retail location.  Brunozzi Aff. ¶ 8.  In her deposition, however, Brunozzi stated that Crossmark paid her for all of the time that she spent in the stores.  Brunozzi Dep. 52:15-55:9.

Sherrie White stated that she was paid for a fixed amount of time regardless of how long she spent performing her administrative tasks.  In her affirmation, she claimed that she was paid for only 15 minutes per day (75 minutes per week) for performing those tasks.  White Aff. ¶ 12.

At her deposition, White testified that she was only allowed to record 230 minutes per week for her administrative tasks. White Dep. 119:5-23. In fact, Defendant's payroll records indicate that the amount of administrative time she recorded varied greatly, and that there were some weeks when White recorded and was paid for as much as 16 hours of administrative time. Def. Opp. to Pls.' Mot. Cond. Cert. Ex. N.

George Gallion claimed in his affirmation that although he spent about 75 minutes per day on administrative tasks, he was only paid for about 30 minutes of that time. Gallion Aff. ¶ 6. In his deposition, Gallion stated that he was told to keep his administrative time to 40 minutes per day, but that in fact he often recorded 60 minutes or more. Gallion Dep. 53:14-54:4. Although Gallion might get a call or e-mail inquiring why he recorded additional administrative time, upon explaining why the tasks took extra time he was never reprimanded and was always paid for overtime entered. *Id.* at 54:9-57:20.

The charts of unpaid wages prepared by Plaintiffs' counsel are similarly unreliable. As stated, Brunozzi acknowledged at her deposition that she was paid for all of the time that she worked at the stores. Brunozzi Dep. 52:15-55:9. According to the chart prepared by counsel, however, there was an average of an hour per day that Brunozzi spent in the stores for which she was not paid.

With only minimal discovery it has become clear that the evidence proffered by Plaintiffs in support of their motions is patently unreliable. Plaintiffs have failed to make even a modest factual showing; they have not produced any reliable evidence "beyond pure speculation or mere allegations." *Symczyk*, 656 F.3d at 193.

B. *The Proposed Class is Not "Similarly Situated" to the Named Plaintiffs*

Even if Plaintiffs' evidence were reliable, Plaintiffs have not demonstrated a "factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." *Id.* That is, they have failed to make any showing that the proposed class is "similarly situated" to the named plaintiffs. In fact, the named plaintiffs are not even all similarly situated relative to each other.[3]

With regard to the claims regarding nonpayment for time spent performing administrative work, the affirmations allege different policies. Some plaintiffs claim that they were not compensated by Crossmark for any of their administrative work performed at home. *See, e.g.*, Garcia Aff. ¶ 11; Guillen Aff. ¶ 11. Other plaintiffs allege that they were paid for a fixed 15 minutes regardless of how much time they actually spent on these tasks. *See, e.g.*, Hise Aff. ¶ 12; Salter Aff. ¶ 12. Still other plaintiffs contend that they were paid a different fixed amount for their administrative work. *See, e.g.*, Postiglione Aff. ¶ 11 (20 minutes per day); Hardin Aff. ¶ 11 (30 minutes per day); Guercio Aff. ¶ 11 (1.5 hours per day). Although Plaintiffs argue that there was a common unwritten policy that applied to the retail representatives, their evidence suggests that there was no common policy at all. The disparity of the claims among the named plaintiffs, the deposition testimony of the employees, and the testimony of the one supervisor deposed make it more likely that any illegal overtime policies were implemented by individual supervisors. The 31 named plaintiffs who would be in the amended class worked under 38 different supervisors in 25 different states. Despite bringing a sampling of named plaintiffs from across the country, Plaintiffs have not demonstrated the existence of a nationwide policy; they have only demonstrated the lack of any such common policy.

---

[3] This is even true of the 31 named plaintiffs who would be included in the narrowed class.

Plaintiffs have also failed to demonstrate that the proposed class members are similarly situated with regard to their claims about unpaid time spent loading and unloading their cars. In Plaintiffs' brief, they allege that all CRT and Dedicated Team members had to load substantial quantities of work materials into their cars in the morning and unload them at night. *See* Pls.' Mot. Leave to Amend 3. At oral argument, however, Plaintiffs' counsel acknowledged that "[b]y and large, the dedicated employees do not have to do that." Oral Arg. Tr. 20, 27, Dec. 20, 2011.

Plaintiffs have not demonstrated that there was any common policy with regard to paying employees for "budgeted" project time as opposed to time actually spent on site. Jeanne Brunozzi testified at her deposition that she was paid for all of the time worked in the stores. Brunozzi Dep. 52:15-55:9. Rhonda McAvinue testified at her deposition that she was never told that she could not exceed the estimated project time; rather, she simply assumed that she could not exceed the amount of budgeted time and so misreported her time worked. McAvinue Dep. 138:14-140:1. Supervisor Deena Schouten, who submitted an affirmation on behalf of Plaintiffs, testified that she always instructed employees to record the full amount of time they worked. Schouten Dep. 186:9-18.

Plaintiffs' evidence may indicate a company-wide policy to keep costs down by trying to keep employees' time worked at or under forty hours per week. However, Plaintiffs do not identify an illegal company-wide policy to prevent employees from recording overtime hours actually worked or not to pay employees for those hours worked. The disparity in the named plaintiffs' testimony demonstrates that any illegal plans or policies that existed were instituted by individual supervisors.

The proposed class is also not similarly situated with regard to the claim concerning drive time. Plaintiffs claim that their drive time was compensable under the "continuous workday"

rule. The application of this rule depends on the nature of the work the retail representatives performed at home and how long that work took. *See Rutti v. Lojack Corp.*, 596 F.3d 1046, 1059-60 (9th Cir. 2010) (holding that travel time to the job site was not compensable because preliminary activities were either not principal activities or were de minimis). Perhaps even more importantly, the application of the continuous workday doctrine depends on when and where the retail representatives were required to perform their administrative tasks. "Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked." 29 C.F.R. § 785.16(a). If Crossmark's retail representatives were required to return home immediately after their last in-store assignment to complete the administrative tasks, the drive time home may be compensable. However, if they could complete the administrative work at any time in the evening, the employee would likely be considered relieved from duty following that last assignment. *See Rutti*, 596 F.3d at 1060-61 (travel time not compensable because postliminary activities could be performed at any time between 7:00 p.m. and 7:00 a.m.). A similar analysis would apply for the morning drive.

At least some of the plaintiffs testified at their depositions that they had some freedom in deciding when and where to complete their morning and evening administrative tasks. Jeanne Brunozzi testified that she was allowed to perform her evening administrative tasks "any time at night" and that the time when she performed the work varied. Brunozzi Dep. 141:2-18. Some tasks could be performed from a computer anywhere. Brunozzi testified that she occasionally performed her administrative work from the library, from her husband's workplace, or from a friend's house. *Id.* 105:14-107:19. Debra Stearns testified that she could perform her evening tasks at any time before midnight. Stearns Dep. 89:13-90:23. McAvinue could complete her

12

tasks at any time before 10:00 p.m. McAvinue Dep. 262:13-25. Some plaintiffs testified that during their morning and evening commutes they could stop or make detours for personal errands. *See* McAvinue Dep. 203:23-25; White Dep. 140:5-142:19 (would sometimes drop her children off at school on her way to first assignment). On the other hand, other plaintiffs submitted affirmations stating that they were told to complete their adminsitrative tasks immediately prior to and after completing their other work for the day. *See, e.g.*, Schornack Aff. ¶ 9, 11; Hise Aff. ¶ 9, 11. At oral argument Plaintiffs' counsel acknowledged the differences that existed among the named plaintiffs. "We have some differences of opinion as to the timing of [the administrative tasks], because some employees were told to do this as soon as they got home. Other employees have testified at deposition that they waited an hour or two to do it." Oral Arg. Tr. 23. These differences are critical to the legal analysis of the drive time claims.

Plaintiffs have not shown that even the narrower proposed class members are similarly situated to the named plaintiffs with regard to any of their claims. The court need not repeat this analysis to conclude that the larger originally-proposed class is not similarly situated to the named plaintiffs.

C. *Plaintiffs Are Improperly Joined*

For the same reasons that the court finds that the proposed class members are not similarly situated to the named plaintiffs, the evidence makes it clear that no common plan or policy existed even with regard to all the named plaintiffs. This court must therefore determine whether the 52 named plaintiffs are all properly joined parties under Federal Rule of Civil Procedure 20. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Rule 20 provides that multiple plaintiffs may join together in one action if: "(A) they assert any right to relief jointly, severally, or in the alternative with

13

respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

The evidence above demonstrates that the named plaintiffs were not similarly situated with regard to one another. Courts have generally held that § 216(b)'s "similarly situated" requirement is less stringent than the requirement of Rule 20(a) that claims arise out of a common transaction or occurrence. *See O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996). Because plaintiffs have failed to demonstrate that there was a common policy or plan denying overtime compensation required under the FLSA, Plaintiffs have not demonstrated any common transaction or occurrence. *See Boyer v. Johnson Matthey, Inc.*, No. 02-CV-8382, 2004 WL 835082, at *3 (E.D. Pa. April 16, 2004) (where plaintiffs suffered different incidents of discrimination at the hands of different supervisors the joinder requirements could only be met if plaintiffs could establish a common pattern or practice of discrimination). *Compare King v. Pepsi Cola Metro Bottling Co.*, 86 F.R.D. 4 (E.D. Pa. 1979) (upholding joinder where plaintiffs alleging discrimination all worked in the same plant and were all directly or indirectly under the supervision of the same individual) *with Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 787-89 (N.D. Ga. 1994) (plaintiffs were misjoined because their discrimination claims lacked a common transaction or occurrence under Rule 20 where each employment decision was made by a different manager within the company). Evidence admitted at trial is likely to be highly individualized and focused on the policies and instructions of the named plaintiffs' 38 different supervisors. James Postiglione, the first named plaintiff, worked under the supervision of Brenda Holmes and Paul Walker. Pls.' Mot. Leave to Amend at Ex. 6. None of the other named

plaintiffs worked under these supervisors. *Id.* The 52 named plaintiffs are not properly joined and all of them except for the first named plaintiff will be dismissed without prejudice.

**IV. Conclusion**

Plaintiffs have failed to make a modest factual showing that the proposed class members are similarly situated to the named plaintiffs. Plaintiffs' evidence lacks credibility. The sheer number of affirmations does little to persuade the court in light of the many material inconsistencies exposed during the depositions. Even if Plaintiffs' evidence were reliable, it is clear that the proposed class members are not similarly situated. The named plaintiffs make different claims about how they were to record their administrative and project time, and when they were to perform their administrative tasks. There is no evidence of a nationwide policy or plan. Because even the proposed amended class does not meet the requirement of § 216(b), the larger original class certainly cannot be certified. Plaintiffs' motions to certify a class will be denied.

The evidence demonstrates that the 52 named plaintiffs are not properly joined in a single action. All plaintiffs other than the first named plaintiff will be dismissed without prejudice. The court will also deny without prejudice Plaintiffs' Motion to Compel and give the parties an opportunity to resolve any discovery disputes without court intervention in light of the changed procedural posture of this action. An appropriate order follows.